FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Administrator c. t. a., d. b. n. of the Estate of SUSAN BORDEN UMPHLETT, Dec'd., v. JOHN N. HACKNEY, Executor of the Estate and Last Will and Testament of W. W. UMPHLETT, JR.

(Filed 24 May, 1967.)

**1. Appeal and Error § 24—**

An exception to the failure of the court to charge sufficiently on an aspect of the law presented by the evidence should set forth, in substance at least, what appellant contends the court should have charged.

**2. Automobiles § 21—**

The court's charge on the duty of a motorist traveling on a wet and slippery highway with worn and smooth tires to exercise due care under the circumstances and not to travel at a speed in excess of that which was reasonable and prudent under the circumstances, *held* sufficient.

**3. Appeal and Error § 1—**

The verdict of the jury in a trial free from error of law is conclusive on appeal.

APPEAL by plaintiff from *Cohoon, J.*, September-October Civil Session of WILSON.

Action for wrongful death. This case was before us at the Fall Term 1965 upon plaintiff's demurrer to certain of the defenses alleged in defendant's answer. *Bank v. Hackney,* 266 N.C. 17, 145 S.E. 2d 352.

On Sunday afternoon 26 August 1962, plaintiff's testate, Susan Borden Umphlett, was a passenger in the Ford station wagon owned and operated by her husband, Dr. W. W. Umphlett, Jr., defendant's testate. They, with three of their four children, were proceeding westerly on U. S. Highway No. 64, a two-lane paved highway en-route from their home in Wilson to a 4:00 wedding in Pittsboro. They had been delayed by engine trouble east of Raleigh. At about 3:35 p.m., they were approximately one mile east of the Capitol in Raleigh. At about 4:00 p.m., at a point approximately 14 miles from the Capitol and about 900 feet west of the intersection of Highway No. 64 with North Carolina Highway No. 55, the station wagon left the road and struck an oak tree 18-22 inches in diameter growing about 10 feet south of the pavement at the edge of a graveled "pull-off" or clearing. The tree was deeply scarred and debarked up to a height of 3½-4 feet. After the impact, the station wagon came to rest about 10 feet from the tree, across the lane for eastbound traffic, with its front end about the center line. The vehicle was severely damaged on the right front. The metal was pushed back along the fender toward the right-door post and pushed in from the right side toward the center of the car. All of the occupants of the station wagon were injured. Mrs. Umphlett was dead upon arrival at the hospital at 4:25 p.m.; Dr. Umphlett died at 5:05 p.m. The three children survived.

At the time the station wagon collided with the tree, a heavy rain was falling, and the asphalt pavement was very slick. There was no eyewitness to the actual collision. At the point of collision, the road was straight for about two miles in either direction with a slight uphill grade in each direction from the pull-off. The only marks on the highway were 83 feet of tire marks which began in the lane for westbound travel, angled to the south (Dr. Umphlett's left) across the center line, and ended at the edge of the pavement, about 15-20 feet from the tree. The ground between the pavement and the tree was heavily graveled and without growth of any kind. Prior to the collision, the driver of a tractor-trailer had stopped in the pull-off and had gone to sleep. He slept through the collision.

Mr. and Mrs. Arthur Woodard, witnesses for defendant, arrived at the scene of the collision seconds after it occurred. Their account of what they saw is summarized as follows: As Mr. Woodard, trav-

eling east on Highway No. 64, drove over a rise, he saw a car traveling west and moving rapidly toward him in his lane of travel. At that time, this vehicle was alongside the clearing. Mr. Woodard immediately reduced speed, and the oncoming car "barely got back" into its lane of travel before it passed his automobile. As soon as it went by, the Woodards saw the Umphlett station wagon across their lane of travel. It was in front of them "about the distance between two telephone poles along the highway." One of the Umphlett girls was lying in the road beside the station wagon; Mr. Woodard stopped immediately and directed traffic around her until the ambulance came.

Plaintiff's evidence tends to show that, on 17 July 1962, Dr. Umphlett had caused the tires on his station wagon to be switched. At that time, Mr. E. V. Alford, the owner of the service station where the switch was made, called his attention to the condition of the two back tires, which had "very little tread on them." Alford had remarked that those two tires were "slick as an onion" and had inquired of Dr. Umphlett if he was going to drive "those tires." Dr. Umphlett had replied, "I'm not; just around town." Alford, however, observed that these same tires were on the station wagon at 1:00 p.m. on Sunday, 26 August 1962, when he checked the air pressure in the tires and filled its tank with gasoline.

Plaintiff alleged in his complaint that Mrs. Umphlett's death was proximately caused by the negligence of her husband, defendant's testate, in that "he operated the station wagon on a wet, slippery road with old tires worn smooth and slippery at a speed and in a manner that he knew, or should have known, that he would be unable to control the same." Plaintiff further alleged that Dr. Umphlett was negligent in that he operated the station wagon without keeping a proper lookout and without keeping it under proper control; that he drove at an illegal and excessive rate of speed in violation of G.S. 20-141(a), (b), and (c).

The jury answered No to the first issue, which was phrased as follows: Was the death of plaintiff's testate, Susan Borden Umphlett, proximately caused by the negligence of defendant's testate, W. W. Umphlett, Jr., as alleged in the complaint? From judgment dismissing the action, plaintiff appealed.

*Gardner, Connor & Lee for plaintiff appellant.*
*Battle, Winslow, Scott & Wiley for defendant appellee.*

PER CURIAM. Plaintiff's Assignment of Error No. 37 is that the court failed (1) "to charge the jury as to the duty of defendant's

testate as the owner and operator of a motor vehicle in the maintenance of the tires of. the. vehicle" and (2) "to apply this legal duty to the evidence offered by the plaintiff in this cause." With reference to this duty, his Honor charged the jury as follows:

> "I instruct you that it is the duty of one who operates a motor vehicle upon the highway with worn and slick tires, with knowledge of the same, upon a wet and slippery road, to operate his motor vehicle with due care, regard to .the weather, and the conditions of the highway, and to. keep his vehicle under control, and decrease his speed in consideration thereof, even though his speed .may be lower than the maximum speed limit applicable there, when necessary, in the exercise of due care, to avoid injury, and a failure to do so constitutes negligence."

He further charged that if plaintiff had satisfied the jury by the greater weight of the evidence that Dr. Umphlett "was negligent in driving an automobile with tires which he knew were worn and slick, on a highway which was wet and slippery, at a rate of speed, which, although not ordinarily unlawful, was unlawful under the circumstances shown by the evidence," and that such negligence was one of the proximate causes of the collision which caused the death of plaintiff's testate, Mrs. Umphlett, then it would be the jury's duty to answer this first issue in plaintiff's favor, that is, YES.

Plaintiff's Assignment of Error No. 37 does not comply with the rules of this Court in that it does not set out plaintiff's contention as to what the court should have charged. *State v. Malpass* and *State v. Tyler*, 266 N.C. 753, 147 S.E. 2d 180. Nevertheless, measuring the charge by the allegation of the complaint with reference to the tires, we think it was sufficient.

The court explained to the jury. that plaintiff might establish his case by the physical facts at the scene of the collision and "other evidence circumstantial in nature." The evidence, which was singularly without conflict, would have justified the jury in finding that an unknown, westbound motorist passed Dr. Umphlett in the face of the approaching Woodard automobile; that Dr. Umphlett, fearing a collision between those two vehicles, suddenly applied his brakes; that because of the slick condition of his rear tires, the wet road, and his speed — whatever it was —, he was unable to control his vehicle, which skidded across the highway into the tree; that the death of plaintiff's testate was thus proximately caused by the joint and concurring negligence of Dr. Umphlett and the unknown motorist. The jury, however, did not adopt this theory. Whether it adopted some other or merely concluded that plaintiff

had failed to carry his burden of proof, it would be idle to speculate. No doubt the theory of joint and concurring negligence was adequately argued. In any event, the court charged the jury that if it found that defendant's negligence was *one* of the proximate causes of the collision, it would answer the first issue YES.

We have examined this case with the utmost care. In none of the assignments brought forward do we find any error which, in our opinion, could have materially affected the outcome of the trial. If, as plaintiff so stressfully contends, the jury erred, still it is beyond our power to correct an erroneous verdict unless it is. made to appear that some error in law contributed to it.

No error.